**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ )<br>　　　　　　　　　　　　　　　　　)<br>**MAHER RASLA,**　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　　　**Plaintiff,**　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　**v.**　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>**TOBY WELLS, SPECIALIZED LOAN**　)<br>**SERVICING; BRIAN MOYNIHAN;**　)<br>**and BANK OF AMERICA, N.A.,**　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　　　**Defendants.**　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>_____) | **Case No. 23-cv-12499-DJC** |

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, J.**                                                                    **August 27, 2024**

## I.　　Introduction

　　Plaintiff Maher Rasla ("Rasla") has filed this lawsuit against Defendants Toby Wells ("Wells"), Specialized Loan Servicing ("SLS"), Brian Moynihan ("Moynihan") and Bank of American, N.A. ("BANA") (collectively, "Defendants") challenging SLS's attempt to collect payments related to a purported predatory loan on his residence and alleging that BANA's modification of his first mortgage on his home under the Home Affordable Modification Program ("HAMP") voided the second mortgage.  Defendants have moved to dismiss all claims.  D. 11, 14. For the reasons stated below, the Court ALLOWS BANA's and Moynihan's motion to dismiss, D. 11, and ALLOWS SLS's and Wells's motion to dismiss, D. 14.

1

## II.    Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678). On a Rule 12(b)(6) motion, the Court may also consider documents incorporated into the complaint, as well as "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs' claim" and "documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

## III.    Factual Background

Except where otherwise noted, the following facts are drawn from the complaint, D. 1-3, and exhibits thereto, and accepted as true for the purpose of resolving the motion to dismiss.

### A.    Countrywide Bank Records Two Mortgages on Rasla's Property

In October 2006, Countrywide Bank recorded two mortgages on Rasla's property located at 6 Torrey Lane, Foxboro, Massachusetts. D. 1-3 ¶¶ 7-9. The first mortgage (Loan number 144584298) was for $327,000 ("First Mortgage") and had an interest rate of 6.625 percent. Id. at ¶ 9; D. 15 at 2-3. The second mortgage (Loan number 144584450) was for $61,700 ("Second

2

Mortgage") and had an interest rate of 8.5 percent.  D. 1-3 ¶ 9; D. 15 at 2-3.  The terms of the Second Mortgage required a balloon payment of the total amount of the loan in 2021, fifteen years from the date of the loan.  D. 1-3 ¶ 11; D. 1-3 at 34.  Rasla alleges that his gross annual income was $20,888 at the time that he signed for the loans and that Countrywide Home Loans, Inc., ("Countrywide") (BANA's predecessor) knew Rasla would default on the loans.  D. 1-3 ¶¶ 10, 12-13; see D. 12-9.

The First Mortgage was recorded on October 5, 2006 and was executed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Countrywide and its successors and assigns.  D. 12-2 at 2.[1]  The Second Mortgage was also recorded on October 5, 2006 and executed in favor of MERS as nominee for Countrywide, and its successors and assigns. D. 1-3 at 35; D. 12-4 at 2.  On May 6, 2011, MERS assigned the First Mortgage to BAC Home Loans Servicing, LP.  D. 12-5 at 2.  On June 1, 2011, BANA informed Rasla that servicing of his Second Mortgage was being transferred from BAC Home Loans Servicing, LP to Real Time Resolutions, Inc.  D. 12-6 at 2.  On April 29, 2019, MERS assigned the Second Mortgage to the Bank of New York Mellon, D. 12-7; D. 15-1 at 2, which subsequently assigned the Second Mortgage to MEB REO Trust VI, C/O SLS on June 15, 2021.  D. 12-8; D. 15-2 at 2.

## B.    The Loan Modification

In 2010, Rasla was struggling to make mortgage payments and applied for HAMP loan modification on both his First and Second Mortgage.  D. 1-3 ¶¶ 15-16.  On August 8, 2012, BANA sent a letter to Rasla informing him that he was approved for a Trial Period Plan under HAMP provided that he make three monthly payments of $1,569 between September and November 2012.

---

[1] The mortgage documents are attached to Rasla's complaint and Defendants' motion to dismiss, and therefore properly considered by the Court on a 12(b)(6) motion to dismiss as central to Rasla's claims and referred to in the complaint.  See Watterson, 987 F.2d at 3.

Id. ¶ 17.  The August 2012 letter referenced only the loan for the First Mortgage.  Id. at 39.  Rasla was subsequently approved for loan modification under the HAMP program as to the First Mortgage and alleges that he has maintained all monthly payments for the past eleven years.  Id. ¶ 18.  Rasla alleges that in only modifying his First Mortgage under the HAMP program, BANA had presumably "written off" his Second Mortgage.  Id. ¶ 19.

On July 14, 2023, SLS allegedly "under the direction and supervision of its CEO," Wells, sent a demand letter to Rasla for $72,111 relating to payments for the Second Mortgage that were never made between 2010 to 2021.  Id.  The letter stated that Rasla had until October 15, 2023 to make the payments or SLS would pursue foreclosure.  Id.  On July 21, 2023, Rasla served SLS a formal demand letter pursuant to Mass. Gen. L. c. 93A claiming that he did not owe SLS any money because BANA had written off the Second Mortgage.  Id. ¶ 20.  On August 30, 2023, SLS informed Rasla that SLS was the loan servicer, not the originator of the loan terms, and that SLS was unaware of any documentation that the Second Mortgage had been written off.  Id. ¶ 21.

## IV.    Procedural History

Rasla instituted this action on October 3, 2023 in Massachusetts Land Court.  D. 1-3.  BANA and Moynihan removed the case to this Court on October 24, 2023.  D. 1.  BANA and Moynihan now have moved to dismiss as to all claims, D. 11.  SLS and Wells also filed a motion to dismiss, D. 14.  The Court noticed the motions to dismiss for hearing, D. 28, and was prepared to hear arguments.  Rasla filed a notice to waive his right to appear, D. 31, and although Defendants appeared for the hearing, the Court did not hear counsel as to the  motions to dismiss, but instead notified counsel that it would decide the pending motions on the papers, D. 34.

## V.      Discussion

Rasla asserts that the loans for his First and Second Mortgage were predatory loans in violation of Mass. Gen. L. c. 183C, § 4.   D. 1-3 at 7.   Rasla further contends that Defendants are engaging in unfair and deceptive trade practices in violation of Mass. Gen. L. c. 93A, specifically, that BANA and Moynihan assigned a predatory loan to SLS, SLS and Wells threatened foreclosure and tried to collect payment on the Second Mortgage which BANA presumably wrote off when it modified the First Mortgage under HAMP.  Id. ¶¶ 12-14, 19-22.  Rasla seeks declaratory judgment that Defendants cannot collect and enforce the Second Mortgage based upon collateral estoppel (Count I), equitable estoppel (Count II), and that the second mortgage is void ab initio as a matter of law (Count III).   Id. ¶¶ 23-28.   Rasla also seeks a permanent injunction that the Second Mortgage is discharged and unenforceable (Count IV) and sanctions against the Defendants pursuant to Mass. Gen. L. chapters 183C, 93A and 231 § 6F (Count V).[2]  Id. ¶¶ 29-32.

### A.      Alleged Violations of Mass. Gen. L. c. 183C, 93A and 231 § 6F (Count V)

#### 1.      Chapter 183C and 93A Claims Against BANA and Moynihan

Rasla alleges that BANA engaged in unfair and deceptive practices because BANA allegedly knew that Rasla could not afford the payments under the two mortgages, the First and Second Mortgages were predatory, and, BANA had no authority to sell or assign the Second Mortgage to SLS or its affiliates because it had modified Rasla's predatory loan in 2012 and had

---

[2] In his oppositions to the motions to dismiss, Rasla appears to assert for the first time claims under the Fair Debt Collection Practices Act against Defendants.  See D. 26 at 7, 11-13; D. 27 at 6, 11-13; see also  D. 33 at 3-4.  Rasla cannot assert new claims in an opposition and, therefore, the Court does not consider these allegations.  See Badio v. G4S Sol. USA, No. 19-cv-12591-ADB, 2021 WL 102656, at *7 n.3 (D. Mass. Jan. 12, 2021) (dismissing new claims that plaintiff raised for the first time in his opposition to defendants' motion to dismiss because plaintiff is required to seek leave to amend prior to asserting new claims).

presumably written off the Second Mortgage as a predatory loan.  D. 1-3 ¶¶ 13, 19, 22.  BANA and Moynihan contend that Rasla's claims premised on violations of either Mass. Gen. L. c. 93A or 183C are time-barred because Rasla filed suit seventeen years after the origination of the loans in October 2006.  D. 12 at 5-6.  Rasla counters that the claims are timely because he did not discover that there was a potential issue with the predatory loans, and specifically the Second Mortgage, until SLS served a formal demand in 2023.  D. 27 at 12-13.  The Court agrees that the claims are time-barred.

The time period for claims based on Chapter 93A and 183C premised on predatory lending commence when the plaintiff enters into the mortgage loan.  See Latson v. Plaza Home Mortg., Inc., 708 F.3d 324, 326–27 (1st Cir. 2013) (concluding the four-year time period for bringing a Chapter 93A claim commenced when the mortgage was signed); Da Silva v. U.S. Bank, N.A., 885 F. Supp. 2d 500, 504 (D. Mass. 2012) (concluding that the time period for bringing a predatory lending claim under 183C commences when the mortgage is signed).  A claim for predatory lending under 183C must be brought within five years of the closing of the loan.  Da Silva, 885 F. Supp. 2d at 504 (holding claim was time barred when plaintiff mailed demand letter a year after the statute of limitations expired).  A four-year statute of limitations applies to a Chapter 93A claim.  Broderick v. PNC Fin. Servs. Grp., Inc., 919 F. Supp. 2d 178, 181 (D. Mass. 2013), aff'd, 554 F. App'x 27 (1st Cir. 2014).

Here, based upon documents attached to and incorporated into the complaint, Rasla signed the original loans on October 5, 2006.  D. 1-3 ¶¶ 8-9; D. 1-3 at 34-35; see D. 12-1; D. 12-2; D. 12-3; D. 12-4.  Rasla had all the necessary information in 2006 to assess whether the loans were predatory when he signed them, but did not challenge the alleged predatory nature of the loans until October 2023.  O'Brien v. Select Portfolio Servicing, Inc., No. 18-cv-12148-RGS, 2019 WL

267475, at *3 (D. Mass. Jan. 18, 2019), aff'd sub nom. O'Brien v. Deutsche Bank Nat'l Tr. Co., 948 F.3d 31 (1st Cir. 2020) (holding claims time barred when plaintiff claimed that mortgage loan was predatory from the beginning but never challenged the predatory nature of the loans until thirteen years later after taking the loan). Accordingly, both Rasla's claims under c. 93A and c. 183C are time-barred.

Rasla argues that the limitations period should be tolled because he did not discover that the Second Mortgage had not been written off until 2023. D. 27 at 12-13. This argument also is unavailing. The discovery rule tolls the statute of limitations until a plaintiff knows or reasonably show know that they have been harmed by defendant's conduct, but this only applies when the injuries are "inherently unknowable." Latson, 708 F.3d at 327 (internal citation and quotation marks omitted). Rasla applied for a loan modification in 2012 and there is no indication in the loan modification letter or agreement that the Second Mortgage was included in BANA's loan modification, which expressly applied only to the First Mortgage. See D. 1-3 at 39-60. Rasla knew or reasonably should have known that the Second Mortgage was not included in BANA's loan modification and therefore the time period for knowing that the Second Mortgage was still in effect was 2006 (date of closing) or latest, August 8, 2012 (notification of HAMP modification for the First Mortgage), not 2023. See Latson, 708 F.3d at 327 (holding that there was no basis to toll the statute of limitations because the terms of the loan were apparent from the face of the document and Massachusetts upholds the terms of written agreements as binding whether or not the signatories actually read them). Even assuming arguendo, that Rasla's claims accrued in 2012, the limitations period for bringing a claim under 93A would have been 2016 and 2017 for a claim pursuant to 183C. Budrow v. Nat'l City Mortg. Co., No. 21-cv-10118-ADB, 2022 WL 14829551, at *3-4 (D. Mass. Oct. 26, 2022) (concluding plaintiff's claims pursuant to Chapter 93A and 183C

were time-barred because plaintiff brought suit pertaining to her mortgage fourteen years after the closing of the mortgage and five years after she modified her loan); Linn v. Option One Mortg., No. 22-cv-11535-IT, 2024 WL 199784, at *5 (D. Mass. Jan. 17, 2024) (concluding that plaintiff's claim was "still untimely where it was filed after the loan modification agreement was executed"). Accordingly, Rasla's claims premised on violations of 93A and 183C against BANA and Moynihan are time barred.

Even assuming *arguendo* that the claims are not barred by the statute of limitations, Rasla's Chapter 93A and 183C claims against BANA and Moynihan fail under Fed. R. Civ. P. 12(b)(6). First, BANA and Moynihan argue that Rasla never served them with a 93A demand letter, D. 12 at 10, which is a prerequisite to filing a 93A claim.  See  Okoye v. Bank of N.Y. Mellon, No. 10-cv-11563-DPW, 2011 WL 3269686, at *4 (D. Mass. July 28, 2011) (dismissing Chapter 93A claim against defendants because plaintiff's failure to send a demand letter was sufficient ground to justify dismissal as a matter of law).  Rasla does not address this argument and the complaint does not allege that BANA and Moynihan were served with a 93A demand letter.  Accordingly, the absence of a demand letter is another basis for dismissal of Rasla's 93A claim against BANA and Moynihan. See  Grundy v. HSBC Bank USA, N.A., as Tr. for Registered Noteholders of Renaissance Home Equity Loan Tr. 2006-3, No. 17-cv-11449-PBS, 2018 WL 4899459, at *11-12 (D. Mass. July 16, 2018) (reasoning that plaintiff's failure to address that he did not serve the demand letter as required for a Chapter 93A claim amounted to waiver and provided a basis for dismissal).

Second, BANA and Moynihan contend that Rasla does not have a plausible basis for a predatory loan claim under Chapter 183C because the loan applications, included with and incorporated in Rasla's complaint, state that Rasla made $20,888 per month, not per year as Rasla

contends to argue that BANA and Moynihan knew that he could not afford his loan.  D. 12 at 8.

Rasla alleges that BANA filled out the form which contained the mistaken income calculation and

that BANA modified the loan under the HAMP loan modification because BANA realized that the

Second Mortgage loan was predatory.  D. 27 at 2 n.1, 2-4.  Even assuming *arguendo* that the

paperwork was incorrect, although Rasla claims that the mortgage payments were 150% of his

income as support that the loans were predatory, D. 1-3 at ¶¶ 12-13, Rasla has not pled either of

the qualifying conditions to support that the Second Mortgage would be considered a "high cost"

loan as required under § 2 of the statute.  <u>See</u> D. 1-3; Mass. Gen. L. c. 183C, § 2 (stating either

condition required to be considered a "high cost home mortgage loan" under the statute are "(i)

the annual percentage rate at consummation will exceed by more than 8 percentage points for first-

lien loans, or by more than 9 percentage points for subordinate-lien loans, the yield on United

States Treasury securities having comparable periods of maturity to the loan maturity as of the

fifteenth day of the month immediately preceding the month in which the application for the

extension of credit is received by the lender; . . . [or] (ii) [e]xcluding either a conventional

prepayment penalty or up to 2 bona fide discount points, the total points and fees exceed the greater

of 5 per cent of the total loan amount or $400; . . .");  <u>Okoye</u>, 2011 WL 3269686, at *4-5

(dismissing claims premised on violations of Chapter 183C because plaintiff did not allege facts

showing that the loan at issue met either condition of the statute to qualify as "high-cost").  For all

these reasons, the Court dismisses Count V premised on violations of Chapters 183C and 93A

against BANA and Moynihan.

2.    *Claims Under Chapter 183C and 93A Against SLS*

SLS contends that it cannot be liable for claims under Chapters 183C or 93A because it is

only the loan servicer and was not actually assigned the loan.  D. 15 at 9-10.  Rasla argues that

SLS is the "agent-collector of the 'assignee'" of the loan and therefore can be held liable as a collector on the Second Mortgage.  D. 26 at 3-4.  The Court agrees that Rasla has not plausibly alleged claims under Chapters 183C or 93A against SLS.

> a)    Chapter 183C

Liability under Chapter 183C only extends to one who "purchases or is otherwise assigned a high-cost home mortgage loan."  Mass. Gen. L. c. 183C § 15(a).  A loan servicer is not liable for the misconduct of a loan originator or lender.  See Okoye, 2011 WL 3269686, at *11–12 (dismissing claims pursuant to 183C against loan servicer because plaintiff alleged no facts that the loan servicer was assigned the loan); see also Drakopoulos v. U.S. Bank Nat'l Ass'n, 465 Mass. 775, 782 (2013) (concluding that the loan servicer could not be liable under 183C because the servicer was not the assignee of the loan).  Here, the mortgage assignment documents state that MEB Loan Trust VI, and not SLS, was assigned the Second Mortgage in June 2021.  See D. 15-2 at 2.  Absent allegations that SLS was assigned the loan, the Court concludes that Rasla has not alleged a Chapter 183C claim against SLS.

> a)    Chapter 93A

SLS also contends that Rasla has not alleged a Chapter 93A claim against it because Rasla's only basis for the 93A claim is a *per se* violation of the Chapter 183C.  D. 15 at 10.  Rasla alleges in the complaint that SLS engaged in unfair and deceptive trade practices by using intimidating tactics to collect on an alleged predatory loan that presumably was written off.  D. 1-3 at 7; D. 1-3 ¶ 19.  Rasla's Chapter 93A theory is predicated on SLS having "direct liability" for the predatory loan made by Countrywide.  D. 1-3 ¶ 20.  Those allegations, however, are insufficient to support a 93A claim.  See In re Creutz, No. 17-11933-MSH, 2018 WL 2733942, at *4 (Bankr. D. Mass. June 5, 2018) (dismissing chapter 93A claim against loan servicer based on alleged misconduct of

loan originator); <u>Dill v. Am. Home Mortg. Servicing, Inc.</u>, 935 F. Supp. 2d 299, 305 (D. Mass. 2013) (dismissing 93A based on allegation that the loan servicer was attempting to enforce a structurally unfair loan because the "[loan servicer] did not originate [p]laintiffs' loan and is therefore not liable").  The Court dismisses Count V as to SLS premised on claims for Chapter 93A and 183C.

    3.    *Sanctions Pursuant to Mass. Gen. L. c. 231 § 6F Are Inappropriate*

    Rasla seeks sanctions against all Defendants pursuant to Mass. Gen. L. c. 231 § 6F for the time spent preparing the lawsuit.  D. 1-3 ¶¶ 31-32.  The statute provides for attorneys' fees and costs in "any civil action in which a finding, verdict, decision, award, order or judgment has been made" that determined that "all or substantially all of the claims, defenses, setoffs or counterclaims, . . . were wholly insubstantial, frivolous and not advanced in good faith."  Mass. Gen. L. c. 231 § 6F.

    Sanctions pursuant to Mass. Gen. L. c. 231 § 6F, however, are "applicable only to cases brought in state courts and does not permit such awards by federal district courts."  <u>See</u> <u>Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp.</u>, 384 F. Supp. 2d 442, 445 (D. Mass. 2005) (denying sanctions pursuant to § 6F because these costs and fees are only available in state courts); <u>Monahan Corp. N.V. v. Whitty</u>, 319 F. Supp. 2d 227, 230-32 (D. Mass. 2004) (same).  Even assuming *arguendo* that § 6F applied here, there is no basis to conclude that the arguments that the Defendants advanced are "frivolous" or not advanced in good faith, particularly given the Court's rulings herein, and sanctions are not warranted.  <u>See</u> <u>Goldwater Bank, N.A. v. Kulikowski</u>, No. 21-cv-10246-DJC, 2022 WL 298068, at *5 n.2 (D. Mass. Feb. 1, 2022) (denying sanctions under

§ 6F were warranted, even if they available in federal court, because the party against whom sanctions were sought prevailed on the motion to dismiss).[3]

## B.   <u>Declaratory Judgment (Counts I-III)</u>

Rasla's claims for declaratory judgment on the theories of collateral estoppel, equitable estoppel and that the Second Mortgage is void as a matter of law are all premised upon the allegation that BANA presumably wrote off the Second Mortgage when it modified the First Mortgage.  D. 1-3 ¶¶ 24, 26, 28.  The Court concludes that Rasla has not pled a plausible factual or legal basis to support these claims.

### 1.   *Collateral Estoppel (Count I)*

Issue preclusion or collateral estoppel bars relitigation of an issue decided in an earlier action where:  (1) there was a "final judgment on the merits in the prior adjudication;" (2) the "party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication;" (3) the "issue decided in the prior adjudication is identical with the one presented in the action in question;" and (4) the "issue decided in the prior adjudication was essential to the judgment in the prior adjudication."  <u>Diogo-Carreau v. Am. Home Mortg. Acceptance, Inc.</u>, 167 F. Supp. 3d 258, 262–63 (D. Mass. 2016) (internal citation and quotation marks omitted).  A plaintiff can rely upon collateral estoppel offensively "when a plaintiff seeks to prevent a defendant from litigating issues which the defendant has previously litigated unsuccessfully in an action

---

[3] In his opposition to the motions to dismiss, Rasla also appears to assert for the first time that the Defendants' motions are brought in bad faith pursuant to Fed. R. Civ. P. 11.  D. 26 at 14; D. 27 at 13.  Pursuing sanctions under Rule 11 requires compliance with certain procedural requirements including but limited to that a "motion for sanctions must be made separately from any other motion."  Fed. R. Civ. P. 11(c)(2); <u>see</u> <u>Triantos v. Guaetta & Benson, LLC</u>, 91 F.4th 556, 564-65 (1st Cir. 2024) (concluding that Rule 11 sanctions were inappropriate because, among other reasons, the party moving for sanctions did not comply with the rule's strict procedural requirements).  Rasla has not complied with these procedural requirements and, accordingly, Rule 11 sanctions are not warranted at least on this basis.

against another party." <u>Pierce v. Morrison Mahoney LLP</u>, 452 Mass. 718, 730 (2008) (citation omitted). The key inquiry is whether defendants received a full and fair opportunity to litigate their claims in the prior proceeding. <u>Diogo-Carreau</u>, 167 F. Supp. 3d at 262. Here, Rasla has not provided any basis to substantiate that the issues raised here have been previously litigated, or that any such basis was essential to a final judgment on the merits or that there is a sufficient plausible basis for relief. <u>See</u> D. 1-3. The Court dismisses Count I as to all Defendants.

2.     *Equitable Estoppel (Count II)*

To establish equitable estoppel, Rasla must plead sufficient facts to show that "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." <u>Moreira v. Citimortgage, Inc.</u>, No. 15-cv-13720-LTS, 2016 WL 4707981, at \*4 (D. Mass. Sept. 8, 2016) (quoting <u>Sullivan v. Chief Justice for Admin. and Mgmt. of Trial Court</u>, 858 N.E.2d 699, 711 (Mass. 2006)). Such estoppel requires that the representation at issue must be "unambiguous." <u>Moreira</u>, 2016 WL 4707981, at \*4 (dismissing equitable estoppel claim because statement from bank that plaintiff might qualify for loan modification fell short of an unambiguous promise). Defendants contend that Rasla cites, without factual support, that BANA "presumably" discharged the Second Mortgage when it modified the First Mortgage, which is insufficient to establish a promise or representation by Defendants to induce reliance. D. 12 at 12; D. 15 at 7. That is, Rasla has not plausibly alleged that BANA represented that the Second Mortgage was written off. <u>See</u> D. 1-3. Rasla alleges that because the loan modification included only the First Mortgage, the Second Mortgage must have been written off, but this allegation is entirely conclusory. D. 1-3 at 7; D. 1-3 ¶ 19. Even as alleged, Rasla received a letter from BANA in May 2011 prior to the loan modification which

13

stated that BANA was no longer servicing the Second Mortgage and the loan modification only referenced the First Mortgage.  See D. 1-3 at 39-60; D. 12 at 12; D. 12-6.  Absent a plausible unambiguous promise, Rasla cannot establish a claim for equitable estoppel.  See Moreira, 2016 WL 4707981, at *4.  Accordingly, the Court dismisses Count II as to all Defendants.

### 3.    Declaration that the Second Mortgage is Void (Count III)

As previously noted, Defendants contend that Rasla has not plausibly alleged that the Second Mortgage was written off or found to be a predatory loan pursuant to Mass Gen. L. c. 183 § 4.  See D. 12 at 12; D. 15 at 7-8; D. 30-1 at 5-6.  Rasla contends that "[i]n most instances" a second mortgage is "presumed extinguished" when a HAMP application is approved and therefore his Second Mortgage is unenforceable because Rasla applied for a loan modification for both loans.  D. 26 at 2, 7; D. 27 at 2, 6; see D. 1-3 at 6.  The Court disagrees that Rasla has plausibly alleged that the Second Mortgage is void.

First, Rasla attached a version of the BANA HAMP loan modification agreements with the complaint which indicate that the modification only applied to the First Mortgage.  See D. 1-3 at 39, 45, 50.  The documents are silent as to the Second Mortgage.  See D. 1-3 at 39-60.  The loan modification agreement provides that "except as expressly modified by this Agreement" the terms of the loan documents remain in effect.  D. 1-3 at 54.  The Court concludes that Rasla has not plausibly alleged that the Second Mortgage was written off or is otherwise unenforceable.  See Ross v. Deutsche Bank Nat'l Co., No. 19-cv-10798-LTS, 2019 WL 4675034, at *3 (D. Mass. Sept. 24, 2019), aff'd, No. 19-2197, 2020 WL 6817807 (1st Cir. Oct. 29, 2020) (granting motion to dismiss declaratory judgment that a note and mortgage encumbering plaintiffs' property was null and void because the settlement agreement concerning foreclosure did not modify the obligations of the underlying loan documents).

14

Second, as discussed above, Rasla has not plausibly pled that the Second Mortgage qualified as a predatory loan pursuant to Chapter 183C.  See D. 1-3.  Without an underlying substantive claim, the Court concludes that there is no basis for his request for declaratory relief and dismisses Count III as to all Defendants.  See Tyler v. Michaels Stores, Inc., 840 F. Supp. 2d 438, 452 (D. Mass. 2012) (dismissing the claim for declaratory relief because plaintiff had failed to plead sufficient facts to support the underlying claims).[4]

### C.      Permanent Injunctive Relief (Count IV)

Rasla contends that he is entitled to a permanent injunction that the Second Mortgage was permanently discharged in 2012 after BANA "presumably" acknowledged that the loan was predatory in nature and modified the First Mortgage under HAMP.  D. 1-3 ¶ 30.  An "injunction is not a cause of action, but a remedy."  Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 46 (D. Mass. 2013).  Courts have dismissed stand-alone counts for injunctive relief.  See e.g., O'Brien v. Wilmington Tr. Nat'l Ass'n as Tr. to CitiBank, N.A., 506 F. Supp. 3d 82, 92 (D. Mass. 2020) (dismissing stand-alone count for permanent injunctive relief); Payton v. Wells Fargo Bank, N.A., No. 12-cv-11540-DJC, 2013 WL 782601, at *6 (D. Mass. Feb. 28, 2013) (same).  Even treating this claim as a remedy, Rasla's request for injunctive relief fails on the first of the requisite showing for such relief as he has failed to show a reasonable likelihood of success on any of his claims against Defendants for the reasons otherwise stated in this Memorandum and Order.  Gagliardi v. Sovereign Bank, No. 05-10859-NG, 2005 WL 8175908, at *2 (D. Mass. Sept. 28, 2005) (denying

---

[4] Rasla also appears to challenge Defendants' motions by arguing that Defendants should have moved for a more definite statement rather than to dismiss.  D. 26 at 9; D. 27 at 8.  A motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e) is appropriate only when the complaint is so "vague or ambiguous" that the party cannot respond, id., which is not the case here.

permanent injunction where plaintiff had failed to show "'main bearing wall' of the four-factor test" for injunctive relief).  Accordingly, the Court dismisses Count IV as to all Defendants.[5]

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Defendants BANA's and Moynihan's motion to dismiss, D. 11, and ALLOWS SLS's and Wells's motion to dismiss, D. 14.

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[5]Given the dismissal of all of the claims against all Defendants, the Court does not reach the alternative argument by the individual defendants, Wells and Moynihan, about other grounds for dismissal of the claims against them.  D. 15 at 4-6; D. 30-1 at 2.